TUCKER, Judge.
The damage claims in these four, above-named suits, which were consolidated for trial, all arose out of an automobile accident occurring on the night of August 23, 1968, at approximately 10:00 P.M., on Highway 10, just east of Franklinton, Louisiana. At that time Harold W. Creel, accompanied by his wife as a passenger, was driving his 1968 Ford pickup truck east on Highway 10. He was returning home from the Riverside Tavern at Clifton, Louisiana, where he had gone to purchase a six-pack of beer. He had drunk one beer there and was drinking one of the six-pack on his way home, having stayed only a few minutes at the tavern. Immediately prior to the accident Mr. Creel, who had been proceeding at about 50 m.p.h. by his and his wife’s estimate, slowed down to turn left at the intersection which leads toward his home in Lynwood Subdivision. Both he and his wife had observed a vehicle approaching on the same highway and headed in a westerly direction, but estimated that it was at least 700 feet away. As Harold Creel attempted to cross the highway into his subdivision the car being driven by Jared Y. Bankston collided with him, causing damage to the Creel truck and severe injuries to the Creels.
The automobile driven by Jared Y. Bankston was damaged to the extent of $1,743.50, as stipulated to by the Bankston insurer, Insured Lloyds and the Creels Mr. Bankston suffered extensive perse-injuries and died four months later r *238 related causes, never having given any testimony in regard to the accident.
The mother of the deceased driver Jared Y. Bankston, who was a major at the time of the accident, brought suit on his behalf against Harold Creel and his insurer (#9379). The United States of America intervened seeking $4,282.50, alleged expense of hospitalization furnished Jared Y. Bankston at the Public Health Service Hospital in New Orleans. Insured Lloyds, the subrogation carrier of Jared Y. Bank-ston, brought suit against the Creels and their insurer (#9380), seeking recovery of $1,743.50, stipulated as the damages to the Bankston automobile. Mrs. Margaret Creel brought suit against the Estate of Jared Y. Bankston, Inez Durden Bankston, and the Fidelity & Casualty Company of New York (Continental Insurance Company), seeking $115,275.00 for medical expenses, past and future, for loss of wages as a Postal Clerk, and for mental pain, suffering, anguish, permanent disability, et al. (#9381). Harold W. Creel brought suit against the Estate of Jared Y. Bankston, Inez Durden Bankston, and Fidelity & Casualty Company of New York (Continental Insurance Company) seeking $9,675.00 for his wife’s injuries, $15,795.00 for damages for injuries to himself and to his truck, and $100,000.00 for his own pain, suffering, mental anguish, and permanent disability (#9382).
The trial judge found negligence on the part of both drivers, Jared Y. Bankston and Harold W. Creel, and, therefore, dismissed the suits by Harold Creel and by the Estate of Jared Y. Bankston (Nos. 9379 and 9382). He also dismissed the suit by Bankston’s subrogation carrier Insured Lloyds, due to Bankston’s negligence (# 9380), and, likewise, the intervention brought by the United States of America in # 9379. Judgment was awarded Mrs. Margaret Creel in the amount of $15,000.-00 against her husband’s insurer and also against the Estate of Jared Y. Bankston. Inasmuch as she had already settled her suit against her husband’s liability insurer for $5,000.00, the full amount of the policy with that company, the judgment was amended on new trial to reduce her judgment against the Estate of Jared Y. Bank-ston to the sum of $7,500.00.
Insured Lloyds and the Estate of Jared Y. Bankston have appealed, alleging that it was not proved by a preponderance of the evidence that Jared Y. Bankston’s speed was excessive to the extent that it was a proximate cause of the accident, and that the accident was caused in fact by the negligence of Creel in turning left immediately into the pathway of an oncoming automobile which he saw.
The trial judge did not find Mr. Creel intoxicated. He did find him guilty of negligence, however, in making a left turn into the path of an oncoming vehicle which he saw and which was obviously approaching too rapidly to allow him to make his turn, cross the west bound lane of traffic and clear the highway before the vehicle reached him. We think that these findings are well-supported by the evidence, and that there is no manifest error in these findings.
Basing his judgment on the testimony of the State Trooper who investigated the accident, the testimony of the Rev. and Mrs. John Lewis and of Mr. Bobby Dillon, all of whom were passed by an automobile they thought to be that of Jared Y. Bankston which they later came upon immediately after the accident, the trial judge found that the deceased Jared Y. Bankston was traveling at an excessive rate of speed and that this speed was a proximate cause of the accident out of which these four consolidated suits arose. We concur in his findings on this score.
Although counsel for the Creels has argued from speed tables to prove the excessive rate of speed at which Jared Y. Bankston must have been travelling at the time of the collision, the trial judge did not base his decision upon any such speculation, and we prefer to ground our opinion *239 upon the testimony which he found to preponderate. The Rev. Mr. Lewis testifiéd that he was travelling on Highway # 10 in a westerly direction at 60 m.p.h., immediately before the accident in question, when a vehicle “flew” by him in such a manner that he commented upon it to his wife. He testified that the vehicle overtook him at the intersection of the Highway with Seven Mile Road, which was variously estimated at 7-8 to 10-14 miles from the point of collision. Mr. Lewis further testified that this was the same vehicle which he later saw overturned after the collision. His wife who was with him at the time testified essentially to the same occurrence of events, but could not identify the automobile positively, although she thought that it was the same one which had just passed them at an excessive rate of speed.
Mr. Bobby Dillon testified that a black and white Chevelle or Malibu passed him shortly before he came upon it overturned immediately following the collision. Mr. Dillon testified that he had been proceeding at the rate of 50 or 60 m.p.h., or faster. He refused to estimate the rate of speed of what turned out to be the Bankston vehicle, other than to say that it passed him while he was going 50-60 m.p.h., or faster.
The investigating officer testified that the Creel pickup truck was knocked back in a westerly direction 150 feet, the cab of the truck having been completely severed from the body of the truck. The Bankston vehicle was completely demolished, with the front end collapsed. It had turned over on its top and traveled approximately 74 feet down into a ditch on the south side of the highway. The officer measured only 18 feet of skid marks from the Bank-ston vehicle to the point of impact, which presents too speculative a circumstance for us to consider. We agree with the trial judge that the evidence preponderates in favor of holding that the Bankston vehicle was being driven at an excessive rate of speed and that this was a proximate cause of the accident. Had Jared Y. Bankston been proceeding at a lawful rate of speed, and assuming that he was approximately 700 feet away as Mr. Creel began his left turn, as testified to by both Mr. and Mrs. Creel, he would have had time in which to clear the highway before Mr. Bankston reached the Creel vehicle. The finding of negligence as to Mr. Creel is nonetheless, correct.
The trial court was correct in dismissing the demands of the plaintiffs in three of these consolidated cases, our Docket Nos. 9379, 9380 and 9382, and in rejecting the intervention of the United States of America in our Docket No. 9379, and in allowing recovery to the plaintiff, Margaret Creel, in our Docket No. 9381.
For the foregoing reasons the judgment of the trial court, including its amended judgment in our Docket No. 9381, is affirmed at the costs of the appellants in these four consolidated suits.
Affirmed.